FREDERICK B. O'NEILL, TRUSTEE, *vs.* EDWARD G. KILDUFF ET UX.

Third Judicial District, New Haven, June Term, 1908.

BALDWIN, C. J., HAMERSLEY, HALL, PRENTICE and THAYER, Js.

Upon the trial of an action by a trustee in bankruptcy to set aside a voluntary conveyance as being in fraud of creditors, no evidence was offered nor any claim made that the insolvent grantor had any other property than that referred to in the testimony and in the arguments of counsel. *Held* that under these circumstances the trial court might lawfully infer and find that during the period of the debtor's insolvency he did not in fact own any other property.

Judgment having been rendered for the plaintiff in such an action, it is within the discretion of the trial court to appoint a receiver to take charge of the property pending the final disposition of the cause on appeal.

O'Neill *v.* Kilduff.

It has long been a rule of public policy in this State that a debtor's property shall be used to pay his debts, in full if possible, otherwise pro rata; and that property conveyed by an insolvent debtor in fraud of his creditors shall likewise be subjected to their claims.

A voluntary conveyance of property by an insolvent debtor in fraud of creditors then existing, may be impeached by, or on behalf of, those who subsequently become creditors, provided the debtor's insolvency continues unbroken meanwhile; for the mere substitution of one set of creditors for another works no material change in the situation, nor does it affect the principle upon which the right of impeachment rests.

An insolvent debtor transferred his half interest in land to his cotenant who thereupon, pursuant to an understanding to that effect, conveyed the entire tract to the debtor's wife and received from her payment for his, the cotenant's, half interest, but nothing was paid for her husband's interest. *Held* that the conveyance of the husband's half was voluntary and without any valuable consideration.

Submitted on briefs June 2d—decided August 3d, 1908.

ACTION by a trustee in bankruptcy to compel the wife of the bankrupt to transfer to said trustees certain property conveyed to her by her husband without valuable consideration and in fraud of creditors, brought to and tried by the Superior Court in New Haven County, *Gager, J.;* facts found and judgment rendered for the plaintiff, and appeal by defendants. *No error.*

The complaint states two causes of action. No question arises as to the first cause. The other is stated in a "second count," which alleges, in substance, that on June 16th, 1902, the defendant Edward G. Kilduff conveyed to his wife, the defendant Margaret E. Kilduff, his interest in the piece of land in Waterbury described in the complaint, without valuable consideration therefor; that at this time Edward G. Kilduff and his brother John H. Kilduff were partners under the firm name of E. G. Kilduff & Company, conducting a clothing store in said Waterbury, and continued this business until July 7th, 1904, when Edward G. Kilduff and John H. Kilduff, as partners for the partnership and each individually, were duly adjudicated bankrupts, and the plaintiff appointed trustee; that at the time

of said conveyance Edward G. Kilduff and the partnership were both insolvent, and Edward G. Kilduff made the conveyance with the intent to defraud his creditors and the creditors of the firm, with the purpose of concealing said property and removing it out of the hands and reach of his creditors and the creditors of the firm ; that such conveyance was a voluntary conveyance, made with the purpose of concealing said property from the creditors of Edward G. Kilduff and the firm, and of preventing the property from being taken and applied to the payment of their debts. .

The answer denied the allegations of the complaint, and the trial court found the issues thus raised for the plaintiff, and ordered that the defendant Margaret E. Kilduff convey to the plaintiff said piece of land, subject to an outstanding mortgage of $10,000.

Among other evidential facts affecting the cause of action as stated in the second count, the finding for appeal states the following : The land described was purchased by Edward G. Kilduff and William S. Jones, a brother of Mrs. Kilduff, in 1889, a year and two months before said partnership was formed, and none of the money belonging to the firm went into the property. The purchase was made by Kilduff and Jones with the intention of some day transferring the land equally to their respective wives, which plan was not carried out. The transfer to Mrs. Kilduff was accomplished in this manner: June 16th, 1902, pursuant to an agreement between them, the defendant Edward G. Kilduff quitclaimed his interest in the said South Main Street property to the said William S. Jones, and then Jones sold and transferred the entire property to the defendant Margaret E. Kilduff, and received from her for his one-half interest the sum of $10,000, which she obtained by giving her note and mortgage upon the entire property. For several years before this Mrs. Kilduff had managed the property, and the business was not mixed up with the partnership affairs. The only consideration paid by Mrs. Kilduff was the $10,000 raised by the mort-

gage and paid to Jones. The value of the land above the $10,000 mortgage was $9,000.

When the partnership was formed Edward G. Kilduff put $17,000 into the business, and had a three-fourths interest; his brother furnished no money or property, but was familiar with the business and had a one-fourth interest.

The firm was in fact insolvent in the spring of 1901, and continued to be insolvent until adjudged bankrupt in July, 1904, when its liabilities were about $27,000 and its assets about $7,900. It did not appear that at the time of the conveyance to Mrs. Kilduff, Edward G. Kilduff actually knew or admitted the insolvency of the firm, but full knowledge of its insolvent condition was available to him from its books and papers in the exercise of reasonable diligence, and he was chargeable with notice of such insolvency. At the time of said transfer Edward G. Kilduff was already insolvent and chargeable with notice of his insolvency. By such transfer, property of the value of $9,000 was voluntarily and without consideration removed from the reach of his creditors and the creditors of said partnership. It did not appear that in June, 1902, either Edward G. or John H. Kilduff owed debts other than partnership debts. No evidence was offered to show, and it did not appear, that any debt or duty of Edward G. Kilduff, or of the firm of E. G. Kilduff & Company, which belonged to any other person in June, 1902, was still unpaid and unsatisfied on July 7th, 1904.

Upon the trial no evidence was offered to show that either of said partners had any property other than as herein stated, nor was any claim made that either owned any other property, but said case was argued and determined upon the theory that the ownership and possession of property was covered by said partnership property and said two pieces of real estate hereinbefore mentioned.

*Lucien F. Burpee* and *Terrence F. Carmody*, for the appellants (defendants).

*John J. O'Neill* and *Nathaniel R. Bronson,* for the appellee (plaintiff).

HAMERSLEY, J.   The court might lawfully infer from the state of the evidence, and the conduct of the parties in the presentation of the evidence and of their case upon argument, that from June 16th, 1902, the time of the voluntary conveyance in question, until the bankruptcy proceedings in July, 1904, all the property owned by Edward G. Kilduff and his brother, both individually and as partners, was the partnership assets and the piece of land in question.   The transactions in respect to the piece of land mentioned in the first count do not affect the questions before us.

The essential facts upon which the judgment of the trial court is based are these : In July, 1902, Edward G. Kilduff accomplished a voluntary conveyance to his wife of property belonging to him individually of the value of $9,000.   This property, and the property of the business firm of which he and his brother were sole members, and to which he had furnished all the money put into the business and in which he had a three-fourths interest, constituted all the property belonging to him and his brother individually and as partners.   At this time the partnership was insolvent, and all the property of the partnership and of the individual partners was insufficient to pay the partnership debts. Edward G. Kilduff, in the exercise of reasonable diligence in the examination of the books and papers of his firm, would have had full knowledge of this insolvent condition. The partnership and its members continued to be thus insolvent, and continued the partnership business, until July, 1904, when, as partners and individually, Kilduff and his brother were duly adjudged bankrupts, having then liabilities of about $27,000 and assets of about $7,900.   Upon these facts the court correctly held that Mrs. Kilduff could not hold the property thus transferred to her by voluntary conveyance, as against the trustee in bankruptcy.

Our State early adopted as a part of its common law the

broad principle of public policy that "every man should pay his debts with his estate, be it what it will be, either real or personal," and if his estate be insufficient to pay all creditors, each one shall have a "suitable proportion to his debt." 1 Col. Rec. p. 151. This principle has influenced the course of our legislation and judicial decisions in respect to insolvency, and underlies our statute against fraudulent conveyances, as well as against preference of creditors with a view to insolvency. It is in view of this principle that our statute against fraudulent conveyances, first enacted in 1702, has been construed, extended and applied. *Curtis* v. *Lewis*, 74 Conn. 367, 50 Atl. 878; 1 Swift's Digest (266), (281), (282); *Trumbull* v. *Hewitt*, 62 Conn. 448, 455, 26 Atl. 350. Our law is now settled that a voluntary conveyance by an insolvent is void as against his creditors, as obnoxious to the principles of our common law and to the construction we have given to our statute against fraudulent conveyances. *Quinnipiac Brewing Co.* v. *Fitzgibbons*, 71 Conn. 80, 85, 40 Atl. 913, and cases there cited; *Whittlesey* v. *McMahon*, 10 Conn. 137, 142; *Abbe* v. *Newton*, 19 id. 20, 27; *Clarke* v. *Black*, 78 id. 467, 471, 62 Atl. 757.

The defendants claim that the facts appearing in the finding are legally inconsistent with the court's conclusion that the conveyance to Mrs. Kilduff was without valuable consideration. There is plainly no merit in this claim. *Clarke* v. *Black*, 78 Conn. 467, 472, 62 Atl. 757.

There is only one other alleged error stated in the assignment which calls for special mention. The defendant strenuously urges that the voluntary conveyance to Mrs. Kilduff is not void as against the trustee in bankruptcy, because it does not appear that any debt or duty of her husband or of his firm, which belonged to any other person at the date of the conveyance, was still unpaid and unsatisfied at the time of the bankruptcy. The claim is, that the voluntary conveyance of a debtor actually insolvent is not void as against subsequent creditors unless the subsequent debts are contracted while the particular debts ex-

isting at the date of the conveyance, or some of them, are still unpaid.

This claim, as applied to this case, is not in accord with our law. In *Paulk* v. *Cooke*, 39 Conn. 566, 572, it appeared that Cooke made a voluntary conveyance to his wife while largely indebted although not actually insolvent, his assets exceeding his liabilities by a little more than the value of the property conveyed. He continued his business, and fourteen months after the conveyance a trustee in insolvency was appointed, the assets, including the property conveyed, being insufficient to meet the liabilities. During the fourteen months from the date of the conveyance to the appointment of the trustee, Cooke had paid all the creditors existing at the time of the conveyance except one, although his indebtedness was not thereby diminished but continuously increased. The action was brought by the trustee in insolvency against Mr. and Mrs. Cooke. We held that the trustee was entitled to recover the property thus voluntarily conveyed, and stated the controlling principle thus : " But it is said that the debts which existed at the time that this conveyance was made, have since, with one exception, been paid ; and that a voluntary conveyance can be impeached only by those who were creditors at the time, not by subsequent creditors. This principle clearly has no application where there has been a continued, unbroken indebtedness. The debts are owed, though they may be due to new creditors. It is a most unsubstantial mode of paying a debt, to contract another of equal amount. It is the merest fallacy to call such an act getting out of debt. From the time of this conveyance Mr. Cooke continued to be in debt, and at the time of this assignment that indebtedness had largely increased." This principle has been recognized in subsequent decisions (*Quinnipiac Brewing Co.* v. *Fitzgibbons*, 71 Conn. 80, 40 Atl. 913), and applies with greater and controlling force to the present case. As applied to a case like the present one, we think the principle is sound. It assumes that the property of an insolvent trader is charged with the pay-

ment of his debts, and that a gift of any substantial part of that property, even if binding as between the donor and donee, charges the property given with the satisfaction of the insolvent's indebtedness. It is the condition of insolvency rather than a deliberate intent to injure or defraud any particular person, that invalidates the conveyance. It is true that the insolvent may continue his business, without his true condition being known, so fortunately as to become entirely free from debt. He then will hold his property absolutely with a complete right to give it away; and in this way he may satisfy also the charge to which the property he gave away while insolvent was subject. Expressions have been used in the decision of cases involving a state of facts different from that in the present case, which, if read apart from their setting, apparently give some support to the defendants' claim; but our attention has been called to no case where, upon a state of facts such as that found by the trial court, a voluntary conveyance has been held good as against the trustee in bankruptcy. An insolvent has no property he can legally give away. All, whether in his possession or that of his donee, is charged with the satisfaction of his indebtedness. Insolvency is the cause of this charge; the cause and its effect are co-existent. The charge cannot be released so long as the cause continues, and the trustee in bankruptcy takes all the insolvent's property (including that he has illegally conveyed during the insolvency) for equal distribution among the then existing creditors.

After the rendition of judgment the court, upon application of the plaintiff, appointed a receiver to take charge of the land which was the subject of the judgment, to collect the rents, pay proper sums chargeable against the premises in connection with the maintenance of the same, and to hold the balance until further order from the court. The appeal assigns error in making this order. Such an order was within the power of the court. 2 Swift's Digest (159).

It is unnecessary to discuss the sufficiency of the appli-

cation, even if that question can be regarded as properly raised by the appeal. In this case the defendants can suffer no harm.

There is no error in the judgment of the Superior Court.

In this opinion the other judges concurred.